**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 12-cv-01883-MSK-CBS

**ONLINE TOOLS FOR PARENTS, LLC,**

 Plaintiff,

v.

**TOM VILSACK, Secretary, United States Department of Agriculture,**

 Defendant.

_____

**OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING
RECOMMENDATION, AND DENYING MOTION TO DISMISS**
_____

  **THIS MATTER** comes before the Court pursuant to the Defendant's Objections **(# 79)** to the Magistrate Judge's February 26, 2013 Recommendation **(# 75)** that the Defendant's Motion to Dismiss **(# 51)** be denied, and the Plaintiff's response **(# 84)**.

  According to the Amended Complaint **(# 46)**, the Plaintiff has a registered trademark in what appears to be an online computer game for children called "PickChow Plate." First published by the Plaintiff in 2009, the game is a "nutritional education tool," involving a playfield consisting of an overhead view of a circular white plate, divided into sectors labeled "fruit," "vegetables," "meat & beans," "dairy," and "grains and starchy vegetables." A smaller plate, labeled "dessert," is located at about the one-o'clock position to, and partially obscured by, the main plate. Players "create healthy meals by dragging and dropping their food choices onto

1

the corresponding section of the PickChow Plate with the goal being to create . . . a nutritious and healthy meal."

In March 2010, the Plaintiff submitted the PickChow Plate game in a contest sponsored by the United States Department of Agriculture. In September 2010, the game was named as Grand Prize winner in the competition. In accordance with the contest's rules, the Defendant was entitled to make use of the PickChow Plate game for a period of one year, and the Plaintiff and Defendant "worked [together] on several occasions to [use] the PickChow Plate mark."

In June 2011, the Defendant published its own online nutrition tool, entitled "ChooseMyPlate." Like the PickChow Plate, the ChooseMyPlate tool included an overhead view of a circular white plate, divided into sectors labeled "fruits," "grains," "proteins," and "vegetables," accompanied by a circular satellite plate (or perhaps a cup) labeled "dairy" at approximately the two-o'clock position, partially obscuring the main plate.

The Plaintiff contends that the Defendant's use of the "ChooseMyPlate" mark infringes upon the Plaintiff's own "PickChow Plate" mark, in that the two marks "are confusingly similar in sight, sound, and meaning" and are aimed at the same market. The Amended Complaint asserts two claims: (i) trademark infringement, in violation of 15 U.S.C. § 1114; and (ii) false designation of origin, in violation of 15 U.S.C. § 1125(a).

The Defendant moved **(# 51)** to dismiss the claims against it for failure to state a claim under Fed. R. Civ. P. 12(b)(6). An element common to both claims is the "likelihood of confusion" between the two marks. The Defendant conceded that likelihood of confusion may be shown by "various factors," such as the degree of similarity between the marks, the intent of the alleged infringer, evidence of actual confusion, etc. However, it argued that the marks here

"are so obviously dissimilar" that no plausible likelihood of confusion was possible, permitting the Court to find, as a matter of law, that no such likelihood of confusion exists.'

The Court referred the Defendant's motion to the Magistrate Judge for a recommendation. On February 26, 2013, the Magistrate Judge issued an oral recommendation **(# 75)** that the motion be denied. The Magistrate Judge noted that the "likelihood of confusion" element is a "fact-intensive question . . . not appropriate for determination on a motion to dismiss." *Citing Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp.*, 634 F.Supp.2d 1226 (D. Colo. 2009). He noted that the question is guided by "a multi-factor test . . . and I think fundamentally all of those factors have to be based upon some record more comprehensive than what I'm dealing with." He stated that "I think there are some significant differences" between the two marks, but conceded that it was "a close call" and that he "ultimately decided that I had to err on the side of caution." He thus recommended that the motion to dismiss be denied and that "the issues . . . are more appropriately resolved through summary judgment or trial."

The Defendant filed timely Objections **(# 79)** to the recommendation, arguing that the Magistrate Judge inappropriately "relied on a general principle" that likelihood of confusion is a question of fact, rather than recognizing that, in appropriate circumstances, the issue can be resolved as a matter of law and erred in failing to recognize that the Plaintiff's mark "is so obviously dissimilar" to the Defendant's mark such that the motion to dismiss should be granted.

Pursuant to Fed. R. Civ. P. 72(b), this Court reviews the recommendation *de novo*. In deciding a Rule 12(b)(6) motion, the Court accepts all well-plead allegations in the Amended Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting*

3

*Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute.[1]  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id.* at 1949-50.  The Court takes the remaining, well-pled factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged.  *Id.* at 1950-51.  What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

Here, the sole question presented is whether the allegations in the Amended Complaint are sufficient to plead the "likelihood of confusion" element.  In determining whether such

---

[1] The Amended Complaint and its supporting exhibits depict the marks in various respects.  The Defendant's motion submitted additional screenshots showing the marks in slightly different respects.  The Plaintiff did not object to the submission of these additional screenshots, and the Court finds that they are within the scope of materials "referenced" in the Amended Complaint and are thus properly before the Court.

likelihood exists, the Court examines a number of non-exhaustive factors, including: (i) the degree of similarity between the marks; (ii) the intent of the alleged infringer in adopting the mark; (iii) evidence of actual confusion; (iv) the similarity between the products themselves and the manner of their marketing; (v) the degree of care likely to be exercised by purchasers; and (vi) the strength or weakness of the marks. *John Allan Co. v. Craig Allen Co. LLC*, 540 F.3d 1133, 1138 (10th Cir. 2008). No one factor is dispositive, and the determination of likelihood of confusion must be based on consideration of all of the relevant factors. *Id.* The burden is on the Plaintiff to adequately plead facts showing a likelihood of confusion. *Id.*

The Defendant's argument focuses almost entirely on a facial comparison between the two marks, largely foregoing any discussion of the remaining factors. This Court finds that there are allegations pertinent to other factors, which if true, could result in a likelihood of confusion. For example, the Amended Complaint alleges that the Defendants' design of the ChooseMyPlate mark "was intentional and done with the purpose of deriving a benefit from" the PickChow mark. The Defendant properly notes that this allegation, standing alone, is insufficiently conclusory, but considering the Amended Complaint as a whole, there are adequate allegations of the Defendant's intentional copying of the PickChow mark.

The Amended Complaint states that the Plaintiff won the contest in September 2010, and the terms of the contest entitled the Defendant to use the PickChow mark until September 2011. The Amended Complaint alleges that, prior to and during that period, the Defendant used the "food pyramid," a triangular graphic, to promote the same nutritional information. However, in June 2011, during the post-contest use period, the Defendant changed from using the "food pyramid" mark to the ChooseMyPlate mark. A reasonable factfinder could very well infer that

the Defendant intentionally switched to the ChooseMyPlate mark during the post-contest period precisely because it knew of the Plaintiff's mark (a fact that is undisputed), it admired the mark (as indicated by it awarding the Plaintiff the Grand Prize in the contest) and because the terms of the contract made it lawful – at that time -- for the Defendant to use that mark.  Thus, when reasonable inferences are drawn in the Plaintiff's favor from well-pled allegations in the Amended Complaint, there is a colorable allegation that the Defendant intentionally appropriated the PickChow mark.

On a somewhat more abstract basis, the allegations support a finding of likelihood of confusion.  Both marks are directed at similar products.  The Plaintiff's product, the PickChow Plate game, is an online nutritional education game targeted at children.  Similarly, according to the Amended Complaint, the Defendant makes use of the mark in its "Blast Off" game, which is also an online nutritional education game targeted at children.[2]  The Amended Complaint also alleges that consumers are unlikely to exercise great care in distinguishing between the marks, noting that the most typical consumers are "children and busy parents" that "have neither the time nor the inclination to research competing products."  Taking these allegations as true, these factors would also tip in favor of a likelihood of confusion.

That leaves the most hotly-contested factor, the degree of similarity between the marks. There are, to be sure, several similarities between the two marks: both are circular designs, intended to invoke the image of a plate.  Both feature a smaller circular design, also intended to

---

[2]     The image shown in the "Blast Off" game, as depicted in exhibits to the Amended Complaint, certainly appears to derive from the ChooseMyPlate mark, but is distinguishable from it in several respects.  Among other things, it lacks text labels and stylistic flourishes that suggest that the circular design is a plate (as opposed to, say, a flying saucer), there is a cartoon character found in the center of the circle, and it is less clear that the four sectors inside the circle are intended to be of significantly different sizes than on the ChooseMyPlate mark.

invoke the image of a plate, located immediately to the upper right of the main plate. Both divide up the main plate into radiating sectors emanating (roughly) from the center like a pie chart, denoting the various proportions of types of food that should comprise a nutritious meal. At a more specific level, there are notable differences between the designs, including the number of sectors on the plate and the labeling of those sectors, the label given to the satellite plate, and various stylistic design elements (such color fills in the sectors, a fork graphic to the left of the plate, and a colored background "placemat" found in the ChooseMyPlate mark but not the PickChow mark).

The Defendant argues that these distinguishing characteristics render the ChooseMyPlate mark "obviously dissimilar" and "visually distinct" from the PickChow mark, but such an argument ignores the more fundamental similarities in the designs. The basic design of both marks are strikingly-similar: "main plate and satellite plate" designs, both using radiating, pie chart-like sectors to convey information. The Defendant argues that the use of "a plate or place setting to depict food or nutrition [is] merely a generic or descriptive element familiar to everyone," as if to suggest that the use of a plate as a design element is an inevitable or standard means of presenting this information. But the Amended Complaint makes clear that, prior to the Plaintiff submitting its design, the Defendant was instead presenting the same information in the form of a triangular "food pyramid," with no plate iconography at all. There is nothing inherent in the presentation of nutritional information that requires it to be presented in the form of a plate divided into radiating sectors and accompanied by a satellite plate. Thus, the decision by the Defendant to choose such a design style, and to do so shortly after acknowledging the Plaintiff's own success in presenting nutritional information through the same basic design, is at the very

least suggestive of a purposeful similarity between them.  The Court cannot say that, as a matter of law, there is no likelihood that relatively unsophisticated consumers would confuse the two variations on the same basic design.  Accordingly, the Court finds that the Plaintiff has alleged facts sufficient to plead a likelihood of confusion.

The Defendant's reliance on *Le Book Publications, Inc. v. Black Book Photography, Inc.*, 418 F.Supp.2d 305 (S.D.N.Y. 2005), is misplaced.  There, a publisher of an industry directory brought, among other things, a trademark suit against the publisher of a competing directory.  Granting the defendant's motion to dismiss the trademark claims, the court observed that, as a matter of law, there was no likelihood of confusion between the two companies' marks or their products.  It found, among other things, that the two companies used different identifying marks that the two directory products were of different shapes and bindings, and that "the books' formats, typefacing, paper, and even the placement of advertising are all noticeably dissimilar." *Id.* at 311.  Beyond standing for the unremarkable proposition that the Court can dismiss a trademark claim upon finding insufficient similarities so as to preclude any likelihood of confusion as a matter of law, *Le Book* is strictly an application of that law to the particular factual circumstances of that case, circumstances that are not necessarily present here.  For the reasons stated above, this Court finds that, unlike *Le Book*, the Plaintiff has adequately alleged several facts that could permit a finding of a likelihood of confusion between the two marks at issue.

Accordingly, the Court **OVERRULES** the Defendant's Objections **(# 79)**, and **ADOPTS** the Magistrate Judge's recommendation **(# 75)**. The Defendant's Motion to Dismiss **(# 51)** is **DENIED**.

Dated this 23rd day of July, 2013.

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
Chief United States District Judge