**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**
Honorable Marcia S. Krieger

Civil Action No. 12-cv-01883-MSK-CBS

ONLINE TOOLS FOR PARENTS, LLC,

      Plaintiff,

v.

TOM VILSACK, Secretary, United States Department of Agriculture,

      Defendant.

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFF'S CLAIMS**

---

      Pursuant to Fed. R. Civ. P. 56, Defendant Tom Vilsack, Secretary, United States Department of Agriculture, through undersigned counsel, hereby moves for summary judgment on all of the remaining claims[1] in the Amended Complaint (**# 46**) filed by Plaintiff, Online Tools for Parents, LLC ("OLTFP").[2] Counsel for the Defendant discussed the grounds for this Motion with counsel for the Plaintiff on February 13, 2014. Plaintiff's counsel opposes the motion.

---

[1] Counts One and Two are the only remaining counts in Plaintiff's Amended Complaint. While Plaintiff's Amended Complaint also included state law and unjust enrichment claims, Plaintiff only asserted these claims against non-governmental defendants who have since been dismissed from this action. See Am. Complaint at 10-12 (**# 46**); Voluntary Dismissals (**# 64-65, 77**). These claims would not have been tenable against the federal government, which has not waived its sovereign immunity with respect to state law and unjust enrichment claims.

[2] On August 23, 2013, Defendant filed the Answer together with a Counterclaim to cancel the federal trademark registration of Registration No. 4,101,749. See Answer and Counterclaim at 13-17 (**# 90**). Defendant's Counterclaim is not the subject of this Summary Judgment Motion, and should remain pending for further disposition in this case even if this Motion is granted.

# BACKGROUND

The USDA

Defendant Tom Vilsack is the current Secretary of Agriculture ("Secretary Vilsack") for the United States Department of Agriculture ("the USDA"), the federal executive department responsible for developing and executing federal government policy on farming, agriculture, forestry, and food.   One of the USDA's components, the Center for Nutrition Policy and Promotion ("CNPP") works to improve the health and well-being of the American public by developing and promoting dietary guidance that links scientific research to the nutrition needs of consumers.

The USDA and the United States Department of Health and Human Services ("HHS") jointly issue the *Dietary Guidelines for Americans* ("DGA") at five-year intervals.  The DGA are mandated by Congress, see 7 U.S.C. § 5341, and provide authoritative advice for people two years and older about how good dietary habits can promote health and reduce risk for major chronic diseases.  See, e.g., Ex. F ¶ 3 (Johnson-Bailey Decl.).

The USDA has issued nutrition guidance to the public for over 100 years.  Throughout that time, the USDA has often used a variety of graphics and icons to convey nutrition messages and dietary recommendations.  See Ex. G ¶ 4 (Haven Decl.); Ex. G1; Ex. H ¶ 4 (Post Decl.).  For example:

|  |  |
|---|---|
| 1940s – A Guide to Good Eating (Basic Seven) <u>See</u> Exhibit G1 at US171. | 1984 – Food Wheel:  A Pattern for Daily Food Choices (with the American Red Cross) <u>See</u> Exhibit G1 at US171. |

The three most recent icons adopted and used by the government are very well-known, if not famous, to the public.  These icons include:  (1) the Food Guide Pyramid icon from 1992; (2) the MyPyramid icon from 2005; and (3) the MyPlate icon from 2011:



| 1992 – Food Guide Pyramid | 2005 – MyPyramid | 2011 - MyPlate |
|---|---|---|

The dispute in the present case primarily concerns the USDA's development of the MyPlate icon from 2011.

The USDA's CNPP was the government agency primarily responsible for leading the development of the 2010 DGA and the associated MyPlate icon.  <u>See, e.g.</u>, Ex. F ¶¶ 3-4 (Johnson-Bailey Decl.).   After the release of MyPyramid in 2005, a number of influential

government and non-government organizations began to believe that MyPyramid did not successfully convey nutrition information and dietary recommendations in an ideal way. <u>See</u> Ex. H ¶ 6 (Post Decl.). As a result, the USDA decided to explore whether other design concepts – such as a divided pie-chart or plate – could successfully convey its nutrition information and dietary recommendations. <u>See id.</u> The USDA had previously explored the use of such icons during the prior development of the Food Guide Pyramid and MyPyramid:



| Considered by the USDA in 1992<br><u>See</u> Ex. G ¶ 6 (Haven Decl.); Ex. G2. | Considered by the USDA in 2004<br><u>See</u> Ex. G ¶¶ 7-8 (Haven Decl.); Ex. G3. |
| --- | --- |

The USDA was also aware that the agencies of several foreign governments previously used such icons to communicate nutrition information to their citizens:



| The Balance of Good Health (Great Britain)<br><u>See</u> Ex. H ¶ 7 (Post Decl.); Ex. H1. | The Australian guide to Healthy Eating<br><u>See</u> Ex. H ¶ 7 (Post Decl.); Ex. H1. | El Plato del Bien Comer (Mexico)<br><u>See</u> Ex. H ¶ 7 (Post Decl.); Ex. H1. | The Food Circle (Sweden)<br><u>See</u> Ex. H ¶ 7 (Post Decl.); Ex. H1. |
| --- | --- | --- | --- |

The USDA's early consideration of the use of a plate graphic to convey nutrition information was also strongly influenced by a 2004 research report by the National Cancer Institute and the California 5 A Day program ("2004 NCI Report") for the 2005 DGA.  See Ex. F ¶ 9 (Bailey-Johnson Decl.); Ex. F4 (2004 NCI Report); Ex. G ¶ 16 (Haven Decl.); Ex. H ¶ 10 (Post Decl.); Ex. H3 (Full report excerpts).  The 2004 NCI Report concluded that a plate graphic, as shown below, effectively communicated a healthy nutrition message to focus group participants:

**2004 NCI Report**

See Exhibit F4 at US 21418.



On July 31, 2009, the USDA entered into a contract with Ketchum, Incorporated ("Ketchum"), a global public relations firm with expertise in food and nutrition, for its branding and marketing services.  See, e.g., Ex. F ¶¶ 4-5 (Johnson-Bailey Decl.).  Over the next year and a half, from approximately August 2009 to May 2011, the USDA and Ketchum worked closely together to develop the appearance of the MyPlate icon.  The USDA and Ketchum developed the final appearance of the MyPlate icon after soliciting and considering:  consumer research; the advice of other government agencies; the results of several trademark clearance searches; and the opinions of other interested stakeholders.  See Ex. F ¶ 26 (Johnson-Bailey Decl.); G ¶ 27 (Haven Decl.); Ex. H ¶ 18 (Post Decl.).  Some of the many various icons considered and tested by the USDA and Ketchum are identified below in chronological order:



| | | | | |
|---|---|---|---|---|
| April 8, 2010 <u>See</u> Ex. F3 at US21404. | April 30, 2010 <u>See</u> Ex. F5 at 21474. | Sept. 16, 2010 <u>See</u> Ex. F7 at US21937. | April 28, 2011 <u>See</u> Ex. F12 at US23807. | May 19, 2011 <u>See</u> Ex. F14 at US23338. |

On June 2, 2011, the USDA publicly released the MyPlate icon.  <u>See, e.g.</u>, Ex. F ¶ 22 (Johnson-Bailey Decl.).

<u>The Apps for Healthy Kids Competition and OLTFP</u>

The USDA's CNPP was involved in other dietary guidance promotional activities during the development of the 2010 DGA and the MyPlate icon.  For example, in March 2010, as part of First Lady Michelle Obama's "Let's Move" campaign, the USDA announced the Apps for Healthy Kids ("A4HK") competition for online applications encouraging children to choose nutritious food and be more physically active.  <u>See</u> Am. Complaint ¶ 24; Ex. I ¶ 3 (Herring Decl.).  The A4HK competition was sponsored and directed by the USDA's CNPP. ChallengePost, Inc. ("ChallengePost"), a government subcontractor, was hired and tasked with: (1) planning, coordinating, and orchestrating the A4HK competition; and (2) executing, administering, and managing the A4HK competition.  <u>See</u> Ex. I ¶ 3 (Herring Decl.). ChallengePost established the online portal for the A4HK competition in March 2010.  <u>See</u> Ex. I ¶ 5 (Herring Decl.).

Plaintiff OLTFP, a small start-up company doing business under the trade name of ZisBoomBah, had developed an online game between 2009-2010 to encourage children to learn

to create healthy meals.  See generally Am. Complaint ¶ 25.  The game, known as PickChow!, allows users to create meals by dragging and dropping foods onto a background image of a plate divided into different food groups.  See generally id.  When Karen Laszlo ("Laszlo"), the Manager of OLTFP, helped design OLTFP's virtual plate for the PickChow! game, she considered the food group portions used by the USDA, and she used the same colors for food groups that were in use by the USDA.  See Ex. A (Laszlo Tr. 67:3-9, 68:15-23).  OLTFP entered the PickChow! game into the A4HK competition.  At least one other entry to the A4HK competition used a divided plate image to convey nutrition information.  See Ex. I ¶ 11 (Herring Decl.); Ex. A (Laszlo Tr. 91:23-93:2); Ex. C at 10, 13 (OLTFP's Response to RFA 21).  On September 29, 2010, OLTFP's PickChow! game was selected as the Grand Prize winner in the "Tools" category of the competition by a panel of expert judges.  See Am. Complaint ¶¶ 25-26.  As a result of its winning entry, OLTFP received a $10,000 prize.  See Am. Complaint Ex. B ¶ 9.

The Dispute and the Litigation

As noted above, on June 2, 2011, the USDA released the MyPlate icon.  One day after the USDA released the MyPlate icon, Laszlo sent an email to two USDA CNPP employees congratulating them on the new plate.  See Ex. A13 at US12491.  Four days later, on June 7, 2011, Laszlo sent another email, stating that Plaintiff intended to file "a complaint regarding the USDA's improper use of [the] Pick Chow! Plate concept."  Id. at US12492.  Six days later, on June 13, 2011, Laszlo filed a trademark application with the United States Patent and Trademark Office, alleging that the plate used as the background image in the PickChow! game ("the PickChow! Plate") was OLTFP's trademark.  See Am. Complaint Ex. A.  On February 21, 2012, the USPTO registered the PickChow! Plate.  See id.  OLTFP subsequently filed its Complaint

with this Court on July 19, 2012, asserting that the USDA's MyPlate icon infringed Plaintiff's registered PickChow! Plate.  **(# 1)**.

| | | |
|---|---|---|
|  |  |  |
| OLTFP's PickChow! Plate as registered. <u>See</u> Am. Complaint Ex. A. | OLTFP's PickChow! Plate as used in commerce.  <u>See</u> Ex. J. | The USDA's MyPlate icon. <u>See</u> Ex. F15 at US23411. |

OLTFP filed its First Amended Complaint on December 18, 2012.  **(# 46)**.  After the Court denied the USDA's Motion to Dismiss, **(# 51, 75, 86)**, the USDA filed its Answer and Counterclaim on August 23, 2013.  **(# 90)**.  During discovery, OLTFP served one set of requests for the production of documents; but it served no other discovery requests, took no depositions, and submitted no expert reports.  Discovery closed on January 17, 2014.  **(# 97)**.

## CLAIMS AND DEFENSES UPON WHICH SUMMARY JUDGMENT IS SOUGHT

I.   **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS ONE AND TWO:  PLAINTIFF CANNOT PROVE A LIKELIHOOD OF CONFUSION FOR ITS FEDERAL TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CLAIMS**

### A. Burden of Proof and Elements

OLTFP bears the burden of proof by a preponderance of the evidence with respect to each of the elements of its federal trademark infringement and unfair competition claims. OLTFP's trademark and unfair competition claims both arise under the Lanham Act, and both claims have similar elements.  To prove federal trademark infringement, OLTFP must establish

that:  (1) it owns a validly registered trademark;[3] (2) the USDA's alleged use is unauthorized; and (3) the USDA's alleged use is likely to cause confusion among consumers in the marketplace.  See 15 U.S.C. § 1114(a);[4] Big O Tires, Inc. v. Bigfoot 4X4, Inc., 167 F.Supp.2d 1216, 1222 (D. Colo. 2001); see also Water Pik, Inc. v. Med-Systems, Inc., 726 F.3d 1136, 1142-43 (10th Cir. 2013).  To prove federal unfair competition, OLTFP must establish that:  (1) it has a protectable mark; and (2) the USDA's alleged use is likely to cause confusion among consumers in the marketplace.  See 15 U.S.C. § 1125(a);[5] Donchez v. Coors Brewing Co., 392 F.3d 1211, 1215 (10th Cir. 2004); see also Water Pik, 726 F.3d at 1143.

---

[3] While OLTFP's federal registration of the PickChow! Plate mark is *prima facie* evidence of its validity, see 15 U.S.C. § 1115(a), the "presumption raised by registration is of course a rebuttable one."  Drexel Enterprises, Inc. v. Richardson, 312 F.2d 525, 527 (10th Cir. 1962).

[4] 15 U.S.C. § 1114(a) provides, in relevant part:

(1) Any person who shall, without the consent of the registrant–

  (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

  . . .

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

[5] 15 U.S.C. § 1125(a) provides:

(a) Civil action

(1) Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

## B.  Key Element That Cannot Be Proven by the Plaintiff

Element:  OLTFP cannot demonstrate a triable issue of fact that the USDA's goods and services are likely to cause confusion in the marketplace with OLTFP's asserted trademark.[6] This element is the same for both of OLTFP's federal claims.  See Water Pik, 726 F.3d at 1143; see also Nestle Prepared Foods Co. v. Pocket Foods Corp., No. 04-cv-02533-MSK-MEH, 2006 WL 2990208, *7 (D. Colo. Oct. 19, 2006).  OLTFP bears the burden of proving a likelihood of confusion at trial.  See Water Pik, 726 F.3d at 1144.

In evaluating whether a likelihood of confusion exists, the Tenth Circuit examines six nonexhaustive factors:

> (1) evidence of actual confusion; (2) the strength of the contesting mark; (3) the degree of similarity between the competing marks; (4) the intent of the alleged infringer in adopting the contested mark; (5) the degree of care that consumers are likely to exercise in purchasing the parties' products; and (6) the similarity of the parties' products and the manner in which they market them.

Id. at 1343.  "No one factor is dispositive, and the final determination of likelihood of confusion must be based on consideration of *all* relevant factors."  Heartsprings, Inc. v. Heartspring, Inc., 143 F.3d 550, 554 (10th Cir. 1998) (emphasis in original); see also id. at 558.  Ultimately, "the key inquiry is whether the consumer is 'likely to be deceived or confused by the similarity of the marks.'"  Id. at 554 (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780 (1992)).

### Factor 1:  Evidence of Actual Confusion

OLTFP cannot prove that more than a minimal number of consumers within the marketplace were actually confused as to the source of the USDA's services provided in

---

[6] The USDA reserves the right to challenge at trial that OLTFP has not met its burden with respect to the other elements of federal trademark infringement and unfair competition.  For example, the USDA reserves the right to argue, if necessary, that the PickChow! Plate is not protectable and that the USDA's alleged use is authorized.  The other elements, however, are not the subject of this Motion.

connection with the MyPlate icon.  See generally Heartsprings, 143 F.3d at 557-58.  During discovery, OLTFP alleged, without corroboration, that two specific individuals were confused.  At most, OLTFP's uncorroborated allegations do not indicate confusion among consumers, only random acquaintances.  See id.  "*De minimis* evidence of actual confusion does not establish the existence of a genuine issue of material fact regarding likelihood of confusion."  Universal Money Centers, Inc. v. AT&T Co., 22 F.3d 1527, 1535-36 (10th Cir. 1994); see also Water Pik, 726 F.3d at 1150-51 ("We have consistently recognized . . . that isolated, anecdotal instances of actual confusion . . . may be disregarded in the confusion analysis.").

1.      For purposes of this Motion, Defendant Vilsack will accept OLTFP's allegation that Vicki Carcaise was confused.  Vicki Carcaise, however, is Karen Laszlo's sister-in-law.  See Ex. A (Laszlo Tr. 117:7-16).  Vicki Carcaise is not a customer of OLTFP.  See Ex. A (Laszlo Tr. 117:19-20).  OLTFP has produced no evidence that Vicki Carcaise was confused as to the source of the USDA's services provided in connection with the MyPlate icon in the normal course of trade.

2.      For purposes of this Motion, Defendant Vilsack will accept OLTFP's allegation that David Shaw was confused.  David Shaw, however, is Karen Laszlo's former employer.  See Ex. A (Laszlo Tr. 33:17).  David Shaw is not a customer of OLTFP.  See Ex. A (Laszlo Tr. 118:3-5).  OLTFP has produced no evidence that David Shaw was confused as to the source of the USDA's services provided in connection with the MyPlate icon in the normal course of trade.

3.      OLTFP has produced no survey evidence relating to this factor.

4.      OLTFP has produced no expert testimony relating to this factor.

*Factor 2:  Strength of the Contesting Mark*

OLTFP cannot prove that its alleged trademark is strong.  The strength of a trademark is "its 'capacity to indicate the source of the goods or services with which it is used.'"  <u>Water Pik</u>, 726 F.3d at 1151 (quoting Restatement (Third) of Unfair Competition § 21 cmt. i (1995)).  A trademark's strength has two components:  (1) conceptual strength; and (2) commercial strength. <u>See</u> <u>Water Pik</u>, 726 F.3d at 1151.  OLTFP's mark is both conceptually and commercially weak.

*Conceptual Strength*

A trademark's conceptual strength ranges between, from least to most distinctive:  (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful.  <u>See</u> <u>id.</u> at 1152.

5.     OLTFP is unable to identify the conceptual strength of the PickChow! Plate.  In its responses to the USDA's requests for admission, OLTFP stated that it was "unable to admit or deny" that the trademark was generic, descriptive, suggestive, arbitrary, or fanciful "[a]fter due and diligent research and consideration."  <u>See</u> Ex. C at 3 (Responses to RFAs 1-5).

6.     At least as early as the 1940s, the USDA used divided pie-chart and/or plate images to convey nutrition messages and dietary recommendations.  <u>See</u> Ex. G ¶ 4 (Haven Decl.); Ex. H ¶ 4 (Post Decl.).

7.     Prior to the date OLTFP alleged it first used the PickChow! Plate, agencies of at least the following foreign governments used divided pie-chart and/or plate images to convey nutrition information prior to OLTFP's use of the PickChow! Plate:   Great Britain, Australia, Mexico, Portugal, and Sweden.  <u>See</u> Ex. H ¶ 7 (Post Decl.); Ex. H1 (2002 Journal Article).

8.     Other third-parties have used divided plate images to convey nutrition information.  For example, a 2004 research report by the National Cancer Institute and the

California 5 A Day program ("2004 NCI Report") for the 2005 DGA concluded that a plate graphic effectively communicated nutrition information.  <u>See</u> Ex. F ¶ 9 (Bailey-Johnson Decl.); Ex. F4 (2004 NCI Report); Ex. G ¶ 16 (Haven Decl.); Ex. H ¶ 10 (Post Decl.); Ex. H3 (Full report excerpts).  In addition, the Physicians Committee for Responsible Medicine urged the USDA to adopt its Power Plate icon in place of MyPyramid in a petition dated March 11, 2010. <u>See</u> Ex. G ¶ 14 (Haven Decl.); Ex. G5 (PCRM Petition); Ex. H ¶ 8 (Post Decl.).

9.     Other third-parties have also applied for trademarks featuring divided plate images for goods and services similar to OLTFP's.  <u>See</u> Ex. E at US12120-21 (Serial No. 76710587); Ex. E at US12122-23 (Reg. No. 3399083); Ex. E at US12124-25 (Serial No. 77822562); Ex. E at US12126-27 (Serial No. 85749466); <u>see generally</u> Ex. E at US12128-32 (various).  Other third-parties have used plates in connection with nutrition information as found in trademark clearance searches done on behalf of the USDA.  <u>See</u> Ex. F11 (TM Searches).

10.     Other third-parties have sought to patent divided plates for the purposes of nutrition.  <u>See</u> Ex. E at US11321-23 (the '295 patent); Ex. E at US11329-32 (the '653 patent); Ex. E at US11355-56 (the '488 patent); Ex. E at US11365-69 (the '181 patent); Ex. E at US11432-34 (the '633 UK patent); Ex. E at US11588-89 (the D'054 design patent); Ex. E at US11590-91 (the D'176 design patent); Ex. E at US11592-96 (the D'012 design patent); Ex. E at US11628-31 (the '698 patent application); Ex. E at US11634-40 (the '546 patent application); Ex. E at US11652-57 (the '933 patent application).

11.     Prior to its use of the PickChow! Plate, OLTFP was aware of other third-parties who used a plate image to convey nutrition information.  <u>See</u> Ex. A (Laszlo Tr. 72:6-15). OLTFP later became aware that the Physicians Committee for Responsible Medicine used a plate image to convey nutrition information.  <u>See</u> Ex. A (Laszlo Tr. 137:21-138:12).  After the

USDA released its MyPlate icon, OLTFP became aware of other third-parties who used a plate image to convey nutrition information.  See Ex. A (Laszlo Tr. 73:19-74:5).

12.     At least one other entry to the contest used a divided plate image to convey nutrition information.  The "Hungry Hiker Build-a-Meal" game, submitted by Ian Holtum on behalf of the Denver Museum of Nature & Science, uses a divided plate image to convey nutrition information.  See Ex. I ¶ 11 (Herring Decl.); http://apps.dmns.org/nutrition/; Ex. A (Laszlo Tr. 91:23-93:2); Ex. C at 10, 13 (OLTFP's Response to RFA 21).

13.     Plaintiff specifically designed its trademark to convey information about a balanced meal to children.  See Ex. A (Laszlo Tr. 68:15-69:3); Ex. B (Dr. James Hill ("Hill") Tr. 14:21-25 (stating, as OLTFP's consultant, that the PickChow! Plate "signifies recommendations for the proportion of the total diet that should come from each of [the depicted food] categories"); Ex. C at 9, 12 (Response to RFA 15); see generally Water-Pik, 726 F.3d at 1152 (stating that a descriptive mark simply "reflects one or more of the product's characteristics or qualities" and is not inherently distinctive).

### Commercial Strength

A trademark's commercial strength may be evaluated by:

> direct evidence, such as consumer surveys or testimony from consumers, and circumstantial evidence regarding:  (1) the length and manner of the mark's use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture.

Water Pik, 726 F.3d at 1154.  A mark is commercially strong when "in the minds of the public, the primary significance . . . is to identify the source of the product rather than the product itself." Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 211 (2000).

14.     OLTFP has produced no survey evidence relating to this factor.

15.     OLTFP has produced no consumer testimony relating to this factor.

16.     OLTFP changed the appearance of the PickChow! Plate in January 2010.  See Ex. A (Laszlo Tr. 71:9-72:5) (discussing changes to food categories and proportions at that time).

17.     OLTFP's website was in beta at all times prior to February 1, 2010.  See Ex. C at 9, 12 (Response to RFA 12).

### *Factor 3:  Degree of Similarity Between the Competing Marks*

OLTFP cannot prove that its mark is similar in "sight, sound, [or] meaning" to the MyPlate icon, Water Pik, 726 F.3d at 1155 – particularly with respect to any unique elements of OLTFP's mark.  The court should "consider 'the marks as a whole as they are encountered by consumers in the marketplace.'"  Id. (quoting King of the Mountain Sports, Inc. v. Chrysler Corp., 185 F.3d 1084, 1090 (10th Cir. 1999)).  The use, by either party, of a "house mark" in conjunction with the respective marks can reduce the overall similarity of the marks.  See Water Pik, 726 F.3d at 1157.

18.     Consumers primarily encounter the PickChow! Plate on OLTFP's website, where the plate is used as the backdrop of OLTFP's PickChow! game.  See Ex. A (Laszlo Tr. 74:17-23); Ex. J (PickChow! Plate); http://www.zisboombah.com/pickchow.

19.     Consumers primarily encounter the USDA's MyPlate icon in educational materials provided by the USDA and other parties relating to nutrition and dietary guidance.  See, e.g., Ex. F15 at US23412.

20.     OLTFP's PickChow! Plate and the USDA's MyPlate icon are significantly dissimilar when compared on the basis of sight when considered as a whole as encountered by consumers in the marketplace:

| Element of Plate | OLTFP's PickChow! Plate | USDA's MyPlate Icon |
|---|---|---|
| Other Elements – Place Mat Frame | None | Fork to left of plate, always present |
| Other Elements – General | Generally used in commerce with: (1) "Pick Chow!" text; (2) cartoon ant; (3) ZisBoomBah title; not on registration | Text of ChooseMyPlate.gov always present |
| Main Plate – Number of Segments | Five | Four |
| Main Plate – Division of Segments | Grey, dotted lines, at angles meeting in center of plate | White, solid lines, at right angles, not meeting in center of plate |
| Writing on Plate – Color | Different color text | White text |
| Writing on Plate – Arrangement | Diagonal towards center | Vertical |
| Writing on Plate – Font | Whimsical, lowercase | Plain, initial capitals |
| Writing on Plate – Words | 5 categories, clockwise from top (dairy, fruit, vegetables, grains & starchy veggies, meat & beans) | 4 categories, clockwise from top (Grains, Protein, Vegetables, Fruits) |
| Side Dish – Word | Dessert | Dairy |
| Side Dish – Design | Flat plate, below main plate | Stylized, above main plate |

See Ex. J (PickChow! Plate), compare with Ex. F15 at US23411 (MyPlate icon).

21.     OLTFP's PickChow! Plate and the USDA's MyPlate icon are significantly dissimilar when compared on the basis of sound when considered as a whole as encountered by consumers in the marketplace.  OLTFP's assigned name of "PickChow! Plate" does not sound like "MyPlate" or "ChooseMyPlate."   The word elements of OLTFP's PickChow! Plate considered by the United States Patent and Trademark Office – DESSERT FRUIT DAIRY

MEAT & BEANS VEGETABLES GRAINS & STARCHY VEGGIES – do not sound like the word elements in the MyPlate icon – DAIRY GRAINS FRUITS VEGETABLES PROTEIN CHOOSEMYPLATE.GOV.  See Ex. D at US12140 (USPTO Trademark List), compare with Ex. F15 at US23411 (MyPlate icon); see also Ex. D at US11904 (PickChow! Plate Trademark Application).

22.     OLTFP's PickChow! Plate and the USDA's MyPlate icon are significantly dissimilar when compared on the basis of meaning when considered as a whole as encountered by consumers in the marketplace.  Pie-chart and plate icons are often used to convey nutrition and dietary information.  See supra Section I.B ¶¶ 6-13.  OLTFP and the USDA, however, both use different proportions of the represented food groups, as well as differences in the food groups represented.  See Ex. J (PickChow! Plate), compare with Ex. F15 at US23411 (MyPlate icon).

23.     To the extent that OLTFP's PickChow! Plate and the USDA's MyPlate icon share any similarities, those similarities relate to well-known elements that predated OLTFP's use.  For example, when OLTFP chose the colors for its food groups on the PickChow! Plate, it purposely selected the same colors already in use by the USDA on its Pyramid icons.  See Ex. A (Laszlo Tr. 67:3-9).  When OLTFP determined the respective sizes of each of the food group portions on the PickChow! Plate, OLTFP took into consideration the food group portion sizes already in use by the USDA on its Pyramid icons.  See Ex. A (Laszlo Tr. 68:15-23).

24.     To the extent that OLTFP's PickChow! Plate and the USDA's MyPlate icon share any similarities, those similarities are mitigated by OLTFP's use of a series of "house marks" in conjunction with the PickChow! Plate.  See generally Water Pik, 726 F.3d at 1157 (discussing how the use of house marks can reduce similarity).  In most cases, the PickChow! Plate is accompanied by the words "Pick Chow!"  See Ex. J (PickChow! Plate); Ex. A (Laszlo Tr. 84:11-

18).   The PickChow! Plate is generally accompanied by a cartoon image of an ant named "Bah." See Ex. J (PickChow! Plate); Ex. A (Laszlo Tr. 84:20-85:21).   The PickChow! Plate is also usually accompanied by "ZisBoomBah," OLTFP's trade name.   See Ex. J (PickChow! Plate); Ex. A (Laszlo Tr. 85:22-86:5).

25.   To the extent that OLTFP's PickChow! Plate and the USDA's MyPlate icon share any similarities, those similarities are mitigated by the USDA's prominent use of the name of its website – ChooseMyPlate.gov – at the bottom of the icon.   This element, directly incorporated within the icon, functions essentially like a house mark.   See Ex. F15 at US 23413; see also id. at US 23414-15 (prohibiting the removal of the USDA's website from the icon).

### Factor 4:  The Intent of the Alleged Infringer in Adopting the Contested Mark

OLTFP cannot prove that the USDA intended "to derive benefit from the reputation or goodwill of" OLTFP by copying the PickChow! Plate.   Water Pik, 726 at 1157-58 (quoting Sally Beauty Co. v. Beautyco, Inc., 304 F.3d 964, 973 (10th Cir. 2002)).   Despite OLTFP's attempt to infer that the USDA intended to copy the PickChow! Plate, see generally Opinion and Order at 5-8 (# 86), there are "absolutely no facts to support [such an] inference."   Universal Money Centers, 22 F.3d at 1532.   As described below, the USDA selected the MyPlate icon only after comprehensively considering pre-existing research, the opinions of experts, and the results of several trademark clearance searches.   In short, the USDA's selection of the MyPlate icon had nothing to do with OLTFP.

26.   Even though OLTFP alleged that it first used the PickChow! Plate in commerce on October 17, 2009 in its trademark application, OLTFP never asserted trademark rights in the PickChow! Plate prior to June 7, 2011 – five calendar days after the release of the MyPlate icon.

See Ex. A (Laszlo Tr. 93:6-94:7); Ex. B (Hill Tr. 17:11-18:6) (stating that he first learned that OLTFP considered the plate image to be its trademark after the USDA released their plate).  On February 25, 2011, approximately 16 months after OLTFP alleged that it first used the PickChow! Plate in commerce, OLTFP did not identify the PickChow! Plate as its trademark in its PickChow! game license agreement with WebMD, LLC.   See Ex. A15 at OLTFP265 (identifying "ZisBoomBah^TM" as OLTFP's only trademark); see also Ex. A (Laszlo Tr. 108:6-13).  On August 29, 2012, approximately 34 months after OLTFP alleged that it first used the PickChow! Plate in commerce, OLTFP did not identify the PickChow! Plate as its trademark on its website.  See A14 at US12104, compare with id. at US12107 (providing notice on May 13, 2013).

27.   No one from the USDA knew that OLTFP considered the PickChow! Plate to be a trademark prior to June 7, 2011 – five calendar days after the release of the MyPlate icon.  See Ex. F ¶ 25 (Johnson-Bailey Decl.); Ex. G ¶ 25 (Haven Decl.); Ex. H ¶ 17 (Post Decl.); Ex. I ¶ 16 (Herring Decl.).

28.   OLTFP applied to register its PickChow! Plate as a trademark on June 13, 2011 – eleven calendar days after the release of the MyPlate icon.  See Am. Complaint Ex. A.

29.   The USDA had previously explored the use of divided pie-chart or plate icons during the prior development of the Food Guide Pyramid and MyPyramid.  See Ex. G ¶¶ 5-8 (Haven Decl.); Ex. G2 (Bell Report); Ex. G3 (Porter Novelli Tests).

30.   The USDA's decision to explore other design concepts for its icon was driven by a number of influential government and non-government organizations, who believed that MyPyramid did not successfully convey nutrition information in an ideal way.  See Ex. F ¶ 7 (Johnson-Bailey Decl.); Ex. G ¶ 13 (Haven Decl.); Ex. H ¶ 6 (Post Decl.).

31.     In the initial stages of the development of the MyPlate icon, the USDA's consideration of the use of a plate graphic to convey nutrition information was strongly influenced by a 2004 research report by the National Cancer Institute and the California 5 A Day program ("2004 NCI Report") for the 2005 DGA.  <u>See</u> Ex. F ¶ 9 (Johnson-Bailey Decl.); Ex. G ¶ 16 (Haven Decl.); Ex. H ¶ 10 (Post Decl.).

32.     In the initial stages of the development of the MyPlate icon, the USDA was aware of extensive third-party use of divided food plates for nutrition guidance.  <u>See generally</u> <i>supra</i> Section I.B ¶¶ 6-8.  The USDA was aware of its own use of divided pie-chart and/or plate images in the past.  <u>See</u> Ex. G ¶ 4 (Haven Decl.); Ex. H ¶ 4 (Post Decl.).  The USDA was aware of the use of divided pie-chart and/or plate images by foreign government agencies.  <u>See</u> Ex. H ¶ 7 (Post Decl.); Ex. H1 (2002 Journal Article).  The USDA was aware of the 2004 NCI Report, <u>see</u> Ex. F ¶ 9 (Bailey-Johnson Decl.); Ex. F4 (2004 NCI Report); Ex. G ¶ 16 (Haven Decl.); Ex. H ¶ 10 (Post Decl.); Ex. H3 (Full report excerpts), as well as the Physicians Committee for Responsible Medicine's Power Plate icon, <u>see</u> Ex. G ¶ 14 (Haven Decl.); Ex. G5 (PCRM Petition); Ex. H ¶ 8 (Post Decl.).

33.     To support its development of the communications plan for the 2010 DGA, including an icon, the USDA retained Ketchum, Incorporated ("Ketchum"), a global public relations firm with expertise in food and nutrition.  <u>See</u> Ex. F ¶¶ 4-5 (Johnson-Bailey Decl.); Ex. G ¶ 11 (Haven Decl.); Ex. H ¶ 5 (Post Decl.).

34.     The USDA and Ketchum first explored integrating MyPyramid with a divided food plate icon.  <u>See</u> Ex. F ¶¶ 8, 10 (Johnson-Bailey Decl.); Ex. F3; Ex. F5; Ex. G ¶ 15 (Haven Decl.).  The USDA and Ketchum next explored three broad alternative design directions:  (1)

divided food plate icons; (2) divided thought bubble icons; and (3) icons featuring an abstract image of a person on a pyramid.  See Ex. F ¶ 12 (Johnson-Bailey Decl.); Ex. F7.

35.    On behalf of the USDA, Ketchum conducted 32 interviews with other third-parties who were influential in communicating nutrition topics to the public during March-April 2010.  See Ex. F ¶ 11 (Johnson-Bailey Decl.); Ex. F6 (Interview Report).  Many of the third-parties recommended that the USDA use a plate image.  See id.  On behalf of the USDA, Ketchum also conducted 14 focus group sessions among general consumers to test messages and materials for the 2010 DGA communication effort.  See Ex. F ¶ 14 (Johnson-Bailey Decl.).  Ketchum specifically tested the effectiveness of various plate graphics under consideration, and reported the results to the USDA.  See id.

36.    On behalf of the USDA, Ketchum hired Thomson Reuters to do a series of trademark clearance searches to make sure that the USDA's icon would not infringe any existing trademarks.  See Ex. F ¶ 18 (Johnson-Bailey Decl.); Ex. F11 (Trademark Clearance Searches); Ex. G ¶ 20 (Haven Decl.); Ex. H ¶ 13 (Post Decl.).

37.    Between August 2009 and May 2011, the USDA used a comprehensive process to create the MyPlate icon to best communicate important nutrition information to the public.  See Ex. F ¶ 26 (Johnson-Bailey Decl.); G ¶ 27 (Haven Decl.); Ex. H ¶ 18 (Post Decl.).

38.    The USDA did not select the MyPlate icon to confuse consumers as to the source of its nutrition guidance, to trade off the goodwill of anyone else, or to suggest a connection with anyone else.  In particular, the USDA selected the MyPlate icon without considering OLTFP's PickChow! Plate.  See Ex. F ¶¶ 26-27 (Johnson-Bailey Decl.); G ¶¶ 27-28 (Haven Decl.); Ex. H ¶¶ 18-19 (Post Decl.); Ex. I ¶ 17 (Herring Decl.).

-21-

### Factor 5:  The Degree of Care That Consumers are Likely to Exercise

OLTFP cannot prove that a likelihood of confusion is enhanced because consumers are likely to exercise a low degree of care in choosing between OLTFP's and USDA's respective services.  See Water Pik, 726 F.3d 1160.  In its Amended Complaint, OLTFP alleged, without support, that its consumers were "unsophisticated."  Am. Complaint ¶ 42.

39.    OLTFP has produced no evidence that its consumers are unsophisticated.

40.    OLTFP requires explicit "parental permission" for children to register as users of its website.  See Ex. A (Laszlo Tr. 27:10-21).  See generally Heartsprings, 143 F.3d at 557 (holding that parents' involvement in caring for disabled children supported a higher degree of care).

### Factor 6:  The Similarity of the Parties' Products and the Manner in Which They Market Them

OLTFP cannot prove that the parties' respective services and marketing are so similar as to support a likelihood of confusion.  Generally, "[t]he greater the similarity between the products and services, the greater the likelihood of confusion."  Universal Money Centers, 22 F.3d at 1532 (citation omitted).

41.    OLTFP's services provided in conjunction with its PickChow! Plate relate primarily to entertainment, rather than education.  For example, OLTFP's services described in the PickChow! Plate trademark registration relate only to entertainment, rather than education.  See Am. Complaint Ex. A ("Entertainment services, namely, providing a website featuring entertainment for children . . .").  OLTFP's website also refers to Pick Chow! as a "food game."  See http://www.zisboombah.com/pickchow.

42.     Limiting OLTFP's services to entertainment services is also supported by the prosecution history of "ZisBoomBah," OLTFP's trade name for all of its activities.  OLTFP explicitly withdrew its claim to educational services to obtain federal registration of ZisBoomBah.   On March 12, 2010, OLTFP filed an application to federally register "ZisBoomBah" as a trademark.  See Ex. D at US11668-70 (ZBB TM Application).  OLTFP initially described its ZisBoomBah services as relating to both "educational and entertainment" services "for children."  Id. at US11669.   The trademark examiner refused to register ZisBoomBah because she concluded that OLTFP's trademark was likely to cause confusion with a previously registered trademark.  See id. at US11709-11 (ZBB Prosecution History).   In response, OLTFP amended the trademark application to narrow the description of ZisBoomBah's services to relate only to entertainment.   See id. at US11753-54 (ZBB Prosecution History) ("Entertainment services, namely, providing a website featuring entertainment for children . . .").  OLTFP used the same narrowed description in each of its other trademark applications, including in the application that matured into the registration for the PickChow! Plate.

43.     The USDA's services provided in conjunction with its MyPlate icon relate primarily to education, rather than entertainment.  See, e.g., Ex. F15 at US23412.  Throughout the past 100 years, the USDA has often used a variety of graphics and icons to convey nutrition messages and dietary recommendations to the public.  See Ex. G ¶ 4 (Haven Decl.); Ex. H ¶ 4 (Post Decl.).  The USDA's decision to use the MyPlate icon was initially motivated by a desire to explore whether other design concepts could successfully convey its nutrition information and dietary recommendations to the public.  See Ex. F ¶ 7 (Johnson-Bailey Decl.); G ¶ 13 (Haven Decl.); Ex. H ¶ 6 (Post Decl.).

44.     OLTFP and the USDA are not competitors, and do not compete for the same sources of revenue.  Between 2009 and 2013, OLTFP received limited revenues from only three activities:

(1) winning the USDA's A4HK competition ($10,000 prize + $1,500 travel funds);

(2) soliciting sponsorships from food companies and interest groups for its Pick Chow! Across America events, a series of "Iron Chef like cook-off" events held between 2010-2011 (~$50,000), see Ex. A (Laszlo Tr. 48:3-50:22); and

(3) licensing various aspects of its website to third-parties ($8,000).

See generally Ex. C at 2 (Response to Interrogatory 6).  For purposes of this Motion, Defendant Vilsack will accept that OLTFP's three revenue-gathering activities are related to services in connection with OLTFP's PickChow! Plate.  In contrast, the USDA:

(1) sponsored, and was prohibited from participating in, its A4HK competition, see Am. Complaint Ex. B ¶ 1;

(2) does not solicit sponsorships from food companies and interest groups, see generally Ex. F15 at US23414 (requiring a statement that the USDA does not endorse other products or organizations); and

(3) makes its "icon, website, and educational messages available for use without cost," see Ex. F15 at US23412.

II.   **IN THE ALTERNATIVE, DEFENDANT IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON COUNTS ONE AND TWO: PLAINTIFF CANNOT PROVE ENTITLEMENT TO COMPENSATION IN THE FORM OF MONEY DAMAGES FOR ITS FEDERAL TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CLAIMS**

A.  **Burden of Proof and Elements**

OLTFP bears the burden of proof by a preponderance of the evidence with respect to entitlement to compensation in the form of money damages for its Lanham Act Claims.   To receive compensation in the form of damages, OLTFP must establish that:   (1) it has been damaged by actual consumer confusion or deception resulting from the USDA's alleged infringement; and (2) it has demonstrated the quantum of damages sought with specificity.   <u>See, e.g.</u>, <u>Australian Gold, Inc. v. Hatfield</u>, 436 F.3d 1228, 1241 (10th Cir. 2006); <u>Brunswick Corp. v. Spinit Reel Co.</u>, 832 F.2d 513, 525-26 (10th Cir. 1987); <u>see generally</u> 15 U.S.C. § 1117(a).

B.  **Key Elements That Cannot Be Proven by the Plaintiff**

**<u>Element 1</u>**:   OLTFP cannot demonstrate that it has been damaged by actual consumer confusion or deception resulting from the USDA's alleged infringement.   According to the Tenth Circuit:

> To recover damages plaintiff must prove it has been damaged by actual consumer confusion or deception resulting from the violation.   Actual consumer confusion may be shown by direct evidence, a diversion of sales or direct testimony from the public, or by circumstantial evidence such as consumer surveys.

<u>Brunswick</u>, 832 F.2d at 525 (citations omitted).

1.   The USDA incorporates by reference the facts identified above showing that OLTFP cannot prove that more than a minimal number of consumers within the marketplace were actually confused as to the source of the USDA's services provided in connection with the MyPlate icon.   <u>See</u> *supra* Section I.B ¶¶ 1-4.

**Element 2**:  OLTFP cannot demonstrate the quantum of monetary damages sought with specificity.

1.      The only type of monetary damages sought by OLTFP in this action are damages based upon a reasonable royalty.  <u>See</u> Ex. C at 5, 7 (Responses to RFA 6-7).

2.      OLTFP has produced no expert testimony relating to this element.

3.      OLTFP has produced no admissible evidence relating to this element.


**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment should be granted, and judgment should be entered for Defendant on all counts of the Plaintiff's Amended Complaint.

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

JOHN F. WALSH
United States Attorney

JOHN J. FARGO
Director

February 14, 2014                          /s/ Scott Bolden
                                        SCOTT BOLDEN
                                        Assistant Director
                                        Commercial Litigation Branch
                                        Civil Division
                                        Department of Justice
                                        Washington, DC  20530
                                        Email:        Scott.Bolden@USDOJ.gov
                                        Telephone:    (202) 307-0262
                                        Facsimile:    (202) 307-0345

                                        MARCY E. COOK
                                        Assistant United States Attorney
                                        ZEYEN WU
                                        Special Assistant United States Attorney
                                        1225 Seventeenth Street, Suite 700
                                        Denver, Colorado 80202
                                        Telephone: (303) 454-0100
                                        Fax: (303) 454-0404

                                        Counsel for Secretary Vilsack

OLTFP v. Vilsack
Civil Action No. 12-cv-01883-MSK-CBS

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFF'S CLAIMS**

**INDEX TO THE EXHIBITS**

| Exhibit | Description |
| --- | --- |
| A | Laszlo Deposition Transcript (Excerpts) |
| B | Hill Deposition Transcript (Excerpts) |
| C | OLTFP's Written Discovery Responses |
| D | OLTFP Trademark Registrations and Prosecution Histories (Excerpts) |
| E | Third-Party Trademarks and Patent Information (Excerpts) |
| F | Donna Johnson-Bailey Declaration and Attachments  (F1-F15) |
| G | Jackie Haven Declaration and Attachments  (G1-G5) |
| H | Rob Post Declaration and Attachments (H1-H3) |
| I | David Herring Declaration and Attachments (I1) |
| J | PickChow! Plate on OLTFP's Website |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of February, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Theodore Laszlo, Jr.
tlaszlo@laszlolaw.com
Counsel for Plaintiff


I also hereby certify that on this 14th day of February, 2014, I have mailed or served the foregoing document to the following non-CM/ECF participant(s) in the manner (mail, e-mail, etc.) indicated by the nonparticipant's name:

None


s/ Scott Bolden
Scott Bolden