**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 12-cv-01883-MSK-CBS

**ONLINE TOOLS FOR PARENTS, LLC,**

    Plaintiff,

v.

**TOM VILSACK, Secretary, United States Department of Agriculture,**

    Defendant.

_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

    **THIS MATTER** comes before the Court pursuant to the Defendant's Motion for Summary Judgment **(# 105)**, the Plaintiff's response **(# 106)**, and the Defendant's reply **(# 107)**.

## FACTS

    The Defendant, United States Department of Agriculture ("USDA"), provides educational information about nutrition. In or about July 2009, the agency set about designing a new graphical representation of a nutritionally-balanced meal to replace the outdated "food pyramid" graphic USDA had been using. According to Donna Johnson-Bailey, by early 2010, the USDA's efforts were focusing on an icon representing a top-down view of a dinner plate (and an adjacent glass of milk) divided into colored radial sectors representing various food groups.

    Separately, in March 2010, the agency announced an "Apps for Healthy Kids" competition, in which the public was invited to submit "online applications encouraging children

1

to choose nutritious food and be more physically active." Plaintiff Online Tools for Parents, LLC ("OTFP") submitted an application that it had developed for its website, zisboombah.com, which is "dedicated to empowering families with just the right online tools to achieve healthy eating." The application in question was a game entitled "PickChow! Plate" ("PickChow") which OTFP had been using on its website since late 2009.

The record contains only a single still image of the PickChow game (Exhibit B to OTFP's response brief) showing a top-down view of an empty white dinner plate divided into five sectors of varying sizes, labeled "dairy," "fruit," "vegetables," "grains & starchy veggies," and "meat & beans." The sectors each radiate out from the center of the plate. A small empty satellite plate, partially obscured by the main plate, is located at the upper right of the main plate and reads "dessert." On either side of the central plate icon are columns of information: the left-hand column instructs: "Drag a food onto your plate and see how your meal adds up!" Beneath it are what appear to be tabs for various food groups ("veggies," "meat & beans," "toppers," "quick picks," etc.) and photographs of various foods, presumably organized by the selected food group (in the example in the record, the "veggies" tab is selected and various serving sizes of artichokes, asparagus, and green beans are shown). The right-hand column reads "Add it up!" and contains what appear to be graphical meters that evaluate different nutritional components ("protein," "carbs," "saturated fat," etc.) of the foods placed on the plate. The bottom of the right-hand column is a readout that appears to evaluate the overall meal, reading "This is a __ star meal," with the ability to display from one to five stars. The plate image is accompanied by the words "Pick Chow!" in a stylized font; a cartoon representation of an ant character in a t-

shirt[1]; and a background suggestive of the plate resting on a picnic blanket atop a green gradient background, with blades of grass forming the bottom border of the image.

OTFP submitted the PickChow game to the contest in or about March 2009. Although there is some dispute on this point, the Court accepts OTFP's contention that the PickChow game as submitted was accompanied by a statement that the game and its components were trademarks belonging to OTFP, although it is undisputed that OTFP did not formally register the PickChow game with the Patent and Trademark Office until February 2012. On September 29, 2010, the USDA declared the PickChow game the winner of the contest's "tools" category.[2]

Meanwhile, the USDA continued to develop the graphic it intended to use to replace the food pyramid. After a series of meetings and focus groups to refine the design, on June 2, 2011, the USDA formally released its selected icon. Entitled "ChooseMyPlate.gov" (the "MyPlate icon"), the icon consists of a top-down view of a white dinner plate that is entirely filled by four colored sectors (or, perhaps, "wedges"). The four sectors are labeled "fruits," "grains," "protein," and "vegetables." The "vegetables" and "grains" sectors are comparatively oversized, and thus, the four sectors converge near, but not precisely at, the center of the plate. Adjacent to the upper right of the plate is a small satellite circle (itself appearing to be a plate or perhaps a glass), entirely filled with a blue circle labeled "dairy." The plate image rest on a solid green

---

[1] OTFP's representative, Karen Laszlo, testified that, on occasion, OTFP would use the PickChow game without the title text or ant character, but those elements were more often present.

[2] The terms of the contest provided that OFTP's submission operated to grant the USDA a one-year license to use the PickChow game in various ways, but it does not appear that the issues in the instant motion turn on the grant and/or expiration of that license.

background, and is accompanied by the image of a fork on the left side. The test beneath the image reads "ChooseMyPlate.gov" in black and white text.

On June 7, 2011, Ms. Laszlo wrote to the USDA, stating that "[OTFP] will be filing a complaint regarding the USDA's improper use of the PickChow! Plate concept, which you will recall was a centerpiece of our award winning app." On or about June 13, 2011, OFTP filed a request to register the PickChow image (consisting solely of the plate images, sector divisions,[3] and labels, not the accompanying columns and game features, ant character, etc.) as a trademark with the Patent and Trademark Office. That registration was granted on February 21, 2012. (The registration certificate does not appear in the summary judgment record, but is attached to the Amended Complaint as Exhibit A and is properly the subject of judicial notice.) OFTP then commenced the instant action. As currently pled, OFTP asserts two claims against the USDA, both under the Lanham Act, 15 U.S.C. § 1051 *et seq.*: (i) trademark infringement, and (ii) false designation of origin/unfair competition. The USDA filed an Answer and Counterclaim **(# 90)**, seeking the cancellation of OTFP's registration under 15 U.S.C. § 1119.

The USDA moves **(# 105)** for summary judgment on both claims, arguing that, as a matter of law, the MyPlate icon does not infringe on the PickChow mark because OTFP cannot show a likelihood of confusion between the two images.

---

[3]  The Court notes that image contained in the Trademark Certificate contains sector divisions that are inconsistent with the image of the actual PickChow game in the record. The Certificate shows the "vegetables" and "fruit" sectors combining to occupy a full 50% of the plate, and the "grains & starchy veggies" sector occupying somewhat less than 25% of the plate. In the image of the actual PickChow game (Ex. 3 to OFTP's response brief), the "vegetables" and "fruit" sectors occupy less than half the plate, and the "grains & starchy veggies" sector appears to occupy somewhat more than 25% of the plate.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine

dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. Likelihood of confusion

OTFP's trademark infringement and unfair competition claims "have virtually identical elements". Both require a plaintiff to prove that the plaintiff possesses a protectable trademark, the defendant used a mark in commerce in conjunction with goods or services, and a showing that the defendant's use of the mark "is likely to cause confusion . . . as to the origin, sponsorship, or approval of [such] goods." *Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045, 1050 (10th Cir. 2008). Although the USDA disputes that OTFP's PickChow mark is protected (and the Court has some doubt that the USDA's use of the mark can be said to be of a commercial nature), the instant motion focuses only on the "likelihood of confusion" element. OFTP bears the burden of proving that a likelihood of confusion between the two images. *Id.* at 1055.

Here, the sole question presented is whether the allegations in the Amended Complaint are sufficient to plead the "likelihood of confusion" element. In determining whether such

likelihood exists, the Court examines a number of non-exhaustive factors, including: (i) the degree of similarity between the marks; (ii) the intent of the alleged infringer in adopting the mark; (iii) evidence of actual confusion; (iv) the similarity between the products themselves and the manner of their marketing; (v) the degree of care likely to be exercised by purchasers; and (vi) the strength or weakness of the marks. *Id.* at 1055; *John Allan Co. v. Craig Allen Co. LLC*, 540 F.3d 1133, 1138 (10th Cir. 2008). No one factor is dispositive, and the determination of likelihood of confusion must be based on consideration of all of the relevant factors. *Id.*

### 1. Actual confusion

The Court begins with evidence of actual confusion between the two marks, as actual confusion, although not essential to a finding of likelihood of confusion, is nevertheless "the best evidence of a likelihood of confusion in the marketplace." *Utah Lighthouse*, 527 F.3d at 1055.

OTFP's response brief essentially concedes that it lacks any evidence of actual consumer confusion between the PickChow game and the USDA's MyPlate icon.[4] Rather, it argues that the "absence of such evidence does not necessarily support a finding of no likelihood of confusion, especially when the products involved are inexpensive." *Citing Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 928 (10th Cir. 1986). It argues that low-priced services (as OTFP does not charge parents or children to use the PickChow game) are unlikely to result in consumers informing the mark's owner of confusion they experienced. *Id.*

---

[4] A portion of Ms. Laszlo's deposition, attached to the USDA's motion, makes passing reference to Ms. Laszlo stating that two individuals connected with OTFP expressed some confusion over the marks, at least insofar as they expressed a belief to Ms. Laszlo that the USDA "stole" OTFP's plate image. The Court has some doubt as to whether this is indeed the type of "confusion" that the Lanham Act seeks to protect against, but in any event, finds these two instances to be of *de minimis* consequence, as there is no evidence that either individual was a "consumer" of OTFP's products or encountered the marks in their ordinary commercial context.

Ultimately, the question presented at the summary judgment stage is whether a plaintiff can come forward with sufficient evidence to carry its burden of proof. Here, although the Court does not assume that OTFP's inability to adduce evidence of actual confusion affirmatively proves that there is <u>no</u> likelihood of confusion, the absence of evidence fails to advance OTFP's claim. In other words, this factor is of no particular weight in the analysis.

### 2. Intent of the USDA

In certain circumstances, a defendant's purposeful adoption of a mark that is similar or identical to another's mark may demonstrate a likelihood of confusion, as it may be indicative of the defendant's intent to appropriate the reputation or goodwill of the existing mark. *See Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 973 (10th Cir. 2002).

OTFP argues that there is significant evidence of the USDA's intentional appropriation of the PickChow plate imagery, given OTFP's success in the 2010 Apps for Healthy Kids contest and the praise lauded on the PickChow game by the USDA in selecting the game as the contest winner. But OTFP fails to adduce evidence that the Apps for Healthy Kids contest was in any way related to the USDA's efforts to replace the food pyramid icon with a new image. By contrast, the USDA has come forward with evidence that the two matters – the contest and the replacement of the food pyramid -- involved different personnel and proceed along different timeframes. For example, Ms. Johnson-Bailey spearheaded the food pyramid replacement process beginning in 2009, while the contest was overseen by David Herring and began in 2010. OFTP offers no evidence that establishes any connection between the contest and the selection of a replacement icon, nor identified any specific USDA personnel involved with both projects. And OFTP offers nothing to contradict the statements by numerous USDA representatives

involved in the icon replacement process denying any knowledge of OTFP's PickChow image. At most, OTFP offers an entirely speculative theory that the a January 2010 USDA memo recommending replacement of the food pyramid icon via "a national effort [to] let the American public choose the most popular" proposed replacement led to the Apps for Healthy Kids contest as the USDA's "vehicle to obtain and screen potential replacement candidates for [the] food pyramid graphic."

Moreover, OTFP's contention that the USDA intentionally copied the PickChow image fails to acknowledge unrebutted evidence from the USDA that a sectored plate image was already under consideration by the USDA during the same time period. The USDA submits an April 8, 2010 e-mail from Ms. Johnson-Bailey to others, attaching copies of certain images the USDA had been discussing and testing as possible replacements for the food pyramid icon, including one that combined the pyramid icon with a sectored plate icon (including an adjacent glass of milk representing dairy servings and accompanying decorative tableware). Although OTFP contends that it entered the PickChow game in the contest on or about March 12, 2010, it offers no evidence or argument to explain how its image was appropriated by contest staffers, passed along to the team working on the food pyramid replacement, modified into the form shown Ms. Johnson-Bailey's e-mail, and incorporated into the discussions the USDA was having with its consultants, all in the short period of time between March 12 and April 8, 2010.

Simply put, the Court finds that only through speculation could a factfinder infer that the USDA intentionally appropriated the PickChow image in order to develop the MyPlate icon.. Thus, this factor fails to demonstrate any likelihood of confusion.

9

### 3. Degrees of similarity

Two of the factors bearing on likelihood of confusion examine the similarities between the marks themselves and the services that each party provides.

Although the USDA argues that there is a cognizable difference between its use of the MyPlate icon for educational purposes and OTFP's representations in its trademark registration materials that it was seeking to register the PickChow image only for entertainment purposes, the Court sees little substantive difference and will assume that both sides use their respective marks for similar purposes.

However, the Court cannot say that there are great similarities between the marks themselves. Although both share the same general design -- a circular plate image divided into sectors, plus a smaller circular satellite image in the upper right – the similarities effectively end there. Perhaps the most striking visual distinction between the two images is the fact that the PickChow plate is empty, but the MyPlate icon is full. Put differently, the PickChow image is of an empty white plate with several black lines drawn on it and words labeling each sector. In the form shown in the record, the PickChow plate contains no food; apparently, it is waiting for players to pick up images of food and place them onto the empty plate.[5] By contrast, the MyPlate icon gives the impression of a plate almost completely filled by four colored "wedges" of food. The "plate" portion of the MyPlate icon is visible only as the white circumference

---

[5] An attachment to Mr. Herring's affidavit contains a small image that gives some impression of how the PickChow game may appear as it is being played. It shows the plate with a few food items placed upon it: photographic images of a glass of milk, a banana and avocado, some slices of bread, and several other items that are difficult to make out. This image suggests that, even as players fill up the plate during a game, the use of recognizable photorealistic images of food render the plate visually distinctive from the MyPlate icon's use of abstract colored wedges to represent food.

around the wedges and as thin lines visible as spaces between the wedges.  Visually, the PickChow plate is overwhelmingly white; the MyPlate icon is quite colorful.

The substantive contents of the two images bear obvious and important differences.  Most profoundly, the PickChow plate identifies the "dairy" food group as one of its five sectors, using the satellite plate to represent the non-food group component of "dessert."  The MyPlate icon uses the satellite plate to represent "dairy" and makes no accommodation for a "dessert" space.  The PickChow plate has a "meat & beans" sector, whereas the MyPlate icon designates that food group as "protein."  Similarly, the MyPlate icon describes a sector as simply "grains," but the PickChow plate includes both "grains & starchy veggies."  Because the two images organize their sectors differently (PickChow including dairy in the main plate; MyPlate relegating it to the satellite plate), the proportions of each given food group are not visually congruent between the two images.  In other words, the MyPlate icon gives a clear indication that fruits and vegetables combined should occupy fully half of a diner's plate, with grains and protein combined occupying the other half (it is not clear whether the satellite plate, representing dairy, is intended to match the scale of the main plate or otherwise suggest what proportions of dairy relative to other food groups is appropriate).  Because its plate includes dairy, those proportions are less easily ascertained from the PickChow plate: the exhibit in the record seems to suggest that fruits and vegetables combined should occupy approximately 45% of the diner's plate, as should "meat & beans" and "grains & starchy veggies" combined, with dairy accounting for what appears to be the remaining 10%.

Finally, the images are also distinctive in their internal geometry.  The PickChow plate contains five sectors radiating from the center of the plate; the MyPlate icon contains only four

11

sectors and they fail to meet at the center. The written labels on the MyPlate icon are all oriented correctly from the viewer/reader's perspective – in other words, each label is depicted along a line parallel to the rectangular aspect of the overall image – making them immediately readable. By contrast, the PickChow plate's written labels are each presented askew (they appear to be oriented along a horizontal line that bisects the sector they appear in), resulting in some labels (like the "dairy" sector) being presented almost vertically when compared to the rectangular aspect of the overall image, requiring some effort from the reader to re-orient his or her eyes when moving from label to label. (The fonts used for the labels are also distinctive, with MyPlate using a standard, slightly-serifed font with each word capitalized, whereas the PickChow image uses a more whimsical sans-serif font and renders the labels all in lower-case letters.)

Although OTFP is correct that "similarities weigh more heavily than differences" when comparing marks, *see Sally Beauty*, 304 F.3d at 972, the Court finds, for the reasons set forth above, that the two images share only the most general and superficial similarities, whereas their differences are both numerous and substantial. Accordingly, although the similarity in the products or services presented tips in favor of a likelihood of confusion, the significant dissimilarities between the marks as shown in the instant record[6] substantially dispels any likelihood of confusion.

---

[6] The Court is compelled to acknowledge that it previously denied **(# 86)** USDA's motion to dismiss, rejecting the USDA's argument that the two images were "obviously dissimilar" and "visually distinct." It is not necessary to attempt to harmonize that finding with the finding here that the two images are more different than they are similar, except to point out the different standards that apply to a Rule 12 motion directed at the sufficiency of a pleading and a Rule 56 motion made on the entirety of a factual record.

### 4. Degree of care

The parties disagree as to the degree of care that prospective users/purchasers exercise in attempting to differentiate between the two marks. Although there is little actual evidence to support either side's position, the Court notes that the basic educational character of the two products, the imprimatur of authority that accompanies the USDA's status as a governmental agency, and the fact that both products/services are provided for free all suggest that consumers encountering the marks are unsophisticated or are unlikely to vigorously compare the marks before proceeding to accept them. Thus, this factor tips somewhat in OTFP's favor.

### 5. Strength of the mark

Finally, the Court turns to the question of whether OTFP's mark is particularly "strong," as "the stronger the mark, the greater the likelihood that encroachment on the mark will cause confusion." *Sally Beauty*, 304 F.3d at 975-76. A mark's "strength" is a measure of both its "conceptual strength" – that is, its distinctiveness – and its "commercial strength," referring to its familiarity in the marketplace. *Utah Lighthouse*, 527 F.3d at 1056.

Turning first to the conceptual strength of each mark, the question of distinctiveness is assessed along a continuum, with highly arbitrary or fanciful marks on one end and largely descriptive or generic marks on the other. *Sally Beauty*, 304 F.3d at 976. The Court begins by noting that the Patent & Trademark Office granted OTFP's registration of the mark on the principal register, thus creating a rebuttable presumption that the mark is "inherently distinctive." *Id.* However, the Court finds that, in the circumstances presented here, that presumption has been adequately rebutted.

The USDA has come forward with unrebutted evidence that the use of a plate image divided into sectors for the purpose of conveying nutritional information has been both common and longstanding. In the affidavit of Robert Post, the USDA shows that it has been using circular, sectored displays to convey nutritional information about food groups since the 1940s. Although the Court is not necessarily persuaded that all circular sectored images are as evocative or direct as images specifically suggesting plates, Mr. Post's affidavit demonstrates more comparable images of sectored plates conveying nutritional guidance in use as far back as a 2004 National Cancer Institute report (showing a plate divided into three sectors, plus a satellite glass of milk in the upper right, accompanied by a knife and fork). Mr. Post also points to a 2002 article from the American Dietetic Association, summarizing the use of similar imagery internationally in locations such as Great Britain (showing a five-sectored plate, bracketed by a knife and fork) and Mexico (four-sectored plate, plus knife, fork, and spoon), among others. Mr. Post also points out the use of a four-sectored circle image, entitled "power plate," in a March 2010 petition, filed with the USDA by the Physician's Committee on Responsible Medicine, requesting that the USDA use that image to replace the food pyramid.

The affidavit of Jackie Haven adds several more examples. She attaches a 1992 USDA report entitled "An Evaluation of Graphic Alternatives" demonstrating a variety of ways to present nutritional guidance, including "pyramid," "triangle," "bowl," and "shopping cart" shapes. Among those designs is one designated as "pie chart," showing a five-sectored circle design (plus an unidentifiable satellite item above the circle) on a diamond-shaped background. Ms. Haven's affidavit also points out that the USDA tested a hand-drawn three-sectored plate

image (plus a glass of blue liquid in the upper right, and an accompanying knife and fork) in 2004 as a possible replacement for the food pyramid.

Taken together, these examples indicate that the concept of presenting nutritional guidance in the form of a sectored circle resembling a plate is not particularly unique or particularly distinctive of OTFP's products or services.[7] Although it is somewhat difficult to classify a mark of this type according to the *Sally Beauty* continuum, at best, OTFP's mark is descriptive in nature, depicting actual generic items (a plate, pictures of food) and inviting the player to place those items within specific boundaries on the plate, just as a person in real life would place food on a plate to create a nutritious meal.  As a descriptive mark, the PickChow plate is of minimal distinctiveness, and thus, fairly weak.  *Id.*  Accordingly, OTFP's PickChow image does not possess particular conceptual strength.[8]

Nor has OTFP come forward with any particular evidence to show any commercial strength of the PickChow mark.  It does not, for example, present market surveys showing that consumers generally associate a sectored-plate/satellite-plate image with OTFP's services, or otherwise shown that consumers are particularly familiar with the sectored-plate image due to OTFP's promotional efforts.  Thus, the mark has little commercial strength as well.

### 6. Weighing the factors

Based on the foregoing, the Court finds that OTFP has failed to carry its burden of coming forward with evidence sufficient to demonstrate a reasonable likelihood of confusion

---

[7]   OTFP's PickChow image is distinct from these only insofar as it depicts a bare plate, whereas all of the examples cited above depict the sectors as filled with a contrasting color or with a photograph or drawing of food items, just as the MyPlate icon does.

[8]   The Court has not been asked to, and thus does not, consider the merits of the USDA's counterclaim seeking to cancel OTFP's mark.

between the two images. OTFP's mark is fairly weak, both conceptually and commercially on its own, and the USDA's MyPlate icon bears only superficial similarities to it. Perhaps because of those limited similarities, there is no evidence of actual confusion by customers between the two marks, nor, given the frequent use of sectored-plate imagery by others, is there likely to be meaningful confusion in the future. Although OTFP's can show that some personnel within USDA were aware of the PickChow plate image while the MyPlate icon was being developed, it has not come forward with evidence sufficient to permit an inference that those actually involved with designing the MyPlate icon were familiar with OTFP's image, such that there is no basis on which a factfinder could conclude that the USDA intentionally adopted a design similar to OTFP's image. Moreover, the record reflects that other USDA personnel were independently developing a sectored-plate design during (and even before) the time frame that OTFP was submitting the PickChow image to the Apps for Healthy Kids contest. The only factors tipping in favor of OTFP – that the two images are used in the same context and for the same purposes and that customers are unlikely to use significant care when evaluating the marks – are simply insufficient to overcome the clear distinctions between the two marks and the manner in which they are presented.

Accordingly, the Court finds that OTFP has failed to carry its burden of demonstrating a genuine dispute of fact as to whether there is a reasonable likelihood of confusion between its PickChow image and the MyPlate icon. Because such a likelihood of confusion is an essential element of both of OTFP's Lanham Act claims, the USDA is entitled to summary judgment on both claims.

## **CONCLUSION**

For the foregoing reasons, the USDA's Motion for Summary Judgment **(# 105)** is **GRANTED**, and judgment will enter in favor of the USDA on OTFP's Lanham Act claims. Because the USDA's counterclaim remains extant and the dispositive motion deadline has passed, it appears that claim is proceeding to trial. The parties shall jointly begin preparation of a proposed Pretrial Order consistent with the instructions in the Trial Preparation Order **(# 78)** with regard to that counterclaim and shall jointly and promptly contact chambers to set a Pretrial Conference.

Dated this 25th day of August, 2014.

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
Chief United States District Judge